UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

REGINALD D. WHITTINGTON, JR.,           )
           Plaintiff,                    )
                                          )
    vs.                                        )          1:06-cv-333-LJM-TAB
                                          )
INDIANAPOLIS MOTOR SPEEDWAY             )
FOUNDATION, INC., a/k/a                  )
HALL OF FAME MUSEUM,                     )
           Defendant.                    )

## FINDINGS OF FACT & CONCLUSIONS OF LAW

Parties appeared with counsel for Court Trial on Thursday, August 14, 2008.  The following

is intended to supplement the findings of fact and conclusions of law entered into the record by the

Court on Thursday, August 14, 2008.

In this case, plaintiff, Reginald D. Whittington ("Don Whittington"), claimed that 1979

Kremer Porsche now on display at defendant's, the Indianapolis Motor Speedway Foundation, Inc.,

also known as Hall of Fame Museum (the "Foundation"), facility in Indianapolis, Indiana, has been

wrongfully withheld from him by the Foundation.  Don Whittington brought this suit under theories

of tortious conversion and replevin.  In Indiana, to prove a claim of tortious conversion the plaintiff

must prove by a preponderance of the evidence either (1) that the defendant appropriated the

personal property of the plaintiff to the defendant's own use and benefit or, that the defendant

exercised dominion over the plaintiff's personal property in exclusion and defiance of the rights of

the plaintiff as owner or lawful possessor of the personal property; or (2) that defendant withheld

the personal property from the plaintiff under a claim and title inconsistent with the plaintiff's as the

property's rightful owner.  *Dominiack Mech., Inc. v. Dunbar*, 757 N.E.2d 186, 188 (Ind. Ct. App.

2001).  To succeed on his claim for replevin, Don Whittington must prove by a preponderance of

the evidence that the Foundation wrongfully held or detained property that belonged to him.  *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1066 (Ind. Ct. App. 2004) (discussing Indiana Code § 32-35-2-1).

 After a day's testimony, the Court concludes that plaintiff, Don Whittington, failed to establish by a preponderance of evidence that the 1979 Kremer Porshe was on loan to the defendant, the Foundation.  The Court finds that the evidence of post-transaction behavior is more consistent with the transfer of the race car as a gift rather than a loan. Plaintiff's burden in this litigation was to prove by a preponderance that at the time of the filing of the suit that he had a possessory interest in the car at the time he demanded its return in 2004.  He failed to do so.

 The facts supporting the Court's conclusion are these:  Plaintiff, his brother Bill Whittington, and another driver, won the LaMans twenty-four-hour race in 1978 in a Kremer Porshe K3.  The Whittington brothers continued to race the Porshe successfully until the governing body changed the rules and reduced the Porshe's competitiveness.  The car sat unused until a conversation took place the contents of which and the parties to which are at issue.

 Don Whittington testified that he spoke to Charles Thompson and Herb Porter in May of 1980 and discussed loaning the car to the Foundation for an indefinite period of time.  He testified that the only topic of the conversation was the loan of the car and that no conversation took place about his making a gift of the car to the Foundation.  At that time, Charles Thompson ("Thompson"), now deceased, was the Superintendent of Buildings and Grounds at the Indianapolis Motor Speedway and had an office in the Speedway Museum near the office of the Speedway Museum Curator, Jack Martin ("Martin").  During the conversation, Thompson showed Don Whittington the basement of the museum. Don Whittington asserted that the only conversation he had at the time

was with Thompson. Herb Porter is also deceased.

Don Whittington testified further that after his conversation with Thompson, he spent from $75,000.00 to $100,000.00 to return the car to pre-race condition in preparation for its display at the museum. The car was delivered to the Foundation by Whittington's employees in late 1980 or early 1981. The car was accepted at the Museum by Thompson, at Martin's direction, who met the delivery truck and helped place the car in the museum. Don Whittington related that after the car was delivered he was convinced that he still owned the car.

Don Whittington saw the car in the museum for the first time in May of 1985, chatted with Thompson but the subject of the car's ownership was not broached. The car was in the basement of the museum and if there was a display sign associated with the car he does not remember it..

Don Whittington testified that in the ensuing years he claimed the car on financial statements and introduced a 1997 financial statement in which the car was listed as his asset. No other financial statements were offered into evidence. He asserted that the car was originally owned by on of his corporations, Road Atlanta, Inc. When that corporation was dissolved and assets distributed he became the sole owner of the car because Don Whittington was the sole shareholder of the corporation. No records of the corporation or the distribution of the assets exist today. Don Whittington maintained that he listed the car on a list of assets he had provided to the U.S. Government, but he could not produce copies of that document.

Don Whittington also testified that when friends called in 2004 about displaying the car at a gathering of Porshe vehicles, he called the Speedway Museum and for the first time learned that the Foundation claimed an ownership interest in the car. He came to Indianapolis to discuss the matter and discovered that the Foundation, through Tony George, was taking an entrenched position

on its ownership.

Robert Jackson Zeigler ("Zeigler"), an employee of the Whittington brothers in a managerial capacity, testified that he was aware that the Whittington brothers had rebuilt the car, but was not privy to any discussions with any Speedway representatives.  According to Zeigler, the Whittington brothers were involved in many businesses including mobile home sales, airplane sales, racing and operation of a credit company.  Zeigler recalled being told by Don Whittington that the car was being prepared for loan to the Speedway Museum.  He was aware that the car appeared on Road Atlanta's records and stated that the car was passed to Don Whittington as the sole shareholder when that corporation was dissolved..  As a financial manager for Don Whittington, Zeigler claims that he placed the vehicle on dozens of financial statements as an asset relying on Don Whittington's representation that he was the owner of the car.  Zeigler testified that the presence of the car at the Speedway Museum was important to the reputation of the Whittington brothers as a tribute to their accomplishments in such a short time in racing.

Zeigler noted that the car had been fully depreciated on the books of Road Atlanta.  He noted further that he did not prepare any 501(c)(3) papers to record a gift for tax purposes.

The current Curator of the Speedway Museum, Ellen Beirley ("Beirley"), testified that she had worked at the Speedway Museum since 1996 and had regarded the car as an asset of the Foundation from the beginning.  She reported her efforts in acquiring title to the car in 2001 after she was instructed to determine the ownership of each of the items in the possession of the museum. After Don Whittington's inquiry about the car in 2004, she consulted museum records and found no written documents to indicate the way in which the museum had acquired possession of the car. Beirley found no donation form and no loan documents.

4

The title in the Speedway Museum's possession had been issued by the Indiana Bureau of Motor Vehicles in reliance upon an affidavit provided by Martin (museum curator at the time the car was presented). His affidavit indicates that the car was donated to the museum by both Don and Bill Whittington. Beirley has since prepared several lists of the museum's possessions and attempted to keep an inventory of gifted and loaned vehicles. Her attempts to do so are ongoing. She has consistently listed the Kremer Porsche as an asset of the Foundation. As entries are updated, information of the various vehicles has changed. The Porshe has been insured by the Foundation for several years. Foundation records further reveal that the car was not listed as a gift on the 990 tax forms for the years 1980 through 1995.

Martin testified that he recalled a conversation with Bill Whittington in which Bill indicated a clear intent to donate the car to the Foundation. Martin indicated that he specifically recalled telling Bill that the Foundation was not interested in a loan because the vehicle was not associated directly enough with the Indianapolis 500-mile race. Martin testified that Thompson had been the Speedway's Superintendent of Buildings and Grounds during the early 1980s and that Thompson had no authority to accept gifts or loans in the name of the Foundation. Martin indicated further that the practice at the time was to give the donor an appraisal of the donated car for tax purposes if they asked. No such appraisal was prepared for this car. He also indicated that at the time the vehicle was delivered to the museum, a placard, *see* Ex. 20, and a case of books on the 1979 Le Mans race were included.

Martin also said that the practice at the time was to discourage loans and that if loans were accepted, specific requirements were demanded, none of which existed for this car. Martin denied ever having spoken to Don Whittington and related that the only conversation he had was with Bill

Whittington. In his affidavit, accepted into evidence by agreement, Bill Whittington denied ever having had a conversation with Martin.

Martin claimed that it was also the practice at the time to prepare a card on each new vehicle accepted into the museum, but no such document was prepared relating to this vehicle. He indicated that there was no written documentation relating to this car and that while an undocumented gift in the 1980s was unusual, such undocumented gifts did exist.

John Cooper ("Cooper"), President and Chief Executive Officer of the Speedway and Chairman of the Foundation in 1980 and 1981, testified that he had hired Martin and instructed him that if he accepted a loaned vehicle he was to be sure to "tie it down." Cooper acknowledged that the museum's procedure for accepting gifts or loans was a bit "loosey goosey" and he expected Martin to cure the problem. He was not sure by the time he left whether Martin had in fact corrected the problem.

As stated on the record, Don Whittington's post-transaction behavior is more consistent with the car being a gift rather than a loan. Because Don Whittington did not prove by a preponderance of the evidence that he had a possessory interest in the car at the time he asked for its return in 2004, his claim for tortious conversion and replevin fail.

DATED this 15th day of August, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

*DISTRIBUTION LIST ATTACHED*

6

Electronically distributed to:

James P. Moloy
DANN PECAR NEWMAN & KLEIMAN
jmoloy@dannpecar.com

William L. O'Connor
DANN PECAR NEWMAN & KLEIMAN
woconnor@dannpecar.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

David M. Mattingly
ICE MILLER LLP
david.mattingly@icemiller.com